**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| BRYAN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-02322-TLP-cgc |
| v. | ) | |
| | ) | JURY DEMAND |
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bryan Williams sued Defendant Federal Express Corporation ("FedEx") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 47 & 49.) Plaintiff responded to Defendant's motion, and Defendant replied. (ECF Nos. 52 & 57.) Similarly, Defendant responded to Plaintiff's motion, and Plaintiff replied. (ECF Nos. 54 & 56.) For the reasons below, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.

## BACKGROUND

Both summary judgment motions include statements of undisputed facts. (ECF Nos. 47-1 & 50.) Plaintiff responded to Defendant's statement of facts. (ECF No. 53.) And Defendant responded to Plaintiff's. (ECF No. 54-1.) Under Rule 56 of the Federal Rules of Civil Procedure,

[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact.

Fed. R. Civ. P. 56(c)(1).

Rule 56(c) also provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). And courts need not consider unsupported factual assertions or materials not cited by the parties. *See* Fed. R. Civ. P. 56(c)(3); *see also Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015) ("'[C]onclusory and unsupported allegations, rooted in speculation,' are insufficient to create a genuine dispute of material fact for trial." (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003))). When a party fails to assert or challenge an assertion of fact properly, Rule 56(e) permits a court to "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

Keeping this in mind, the Court now turns to the facts relevant to the summary judgment motions. These facts are undisputed unless otherwise stated.

I.    **Undisputed Facts**

A.    **Employment, Injury, and Treatment**

Plaintiff began working for FedEx as a part-time cargo handler in January 2016. (ECF Nos. 48-1 at PageID 162; 50-1 at PageID 431.) He then applied for and received a full-time

position as a material handler for FedEx in 2017.  (ECF Nos. 48-1 at PageID 162–63, 221–23; 50-1 at PageID 431–32.)  In April 2018, Plaintiff suffered a serious injury to his left foot during work.  (ECF Nos. 48-1 at PageID 167, 187; 50-1 at PageID 434–36; 50-2 at PageID 474.)  After his injury, Plaintiff took a leave of absence from work.  (ECF No. 50-2 at PageID 474–75.)

Plaintiff obtained medical treatment directly after the injury and surgeons operated on his foot a few days later.  (ECF No. 50-1 at PageID 436–37.)  During his recovery from surgery, Plaintiff developed gangrene in his foot and sought treatment with Dr. Daniel Tucker.  (ECF Nos. 48-1 at PageID 167, 187; 50-1 at PageID 438.)  Because of Plaintiff's gangrene, doctors performed a second surgery to amputate his big toe.  (ECF No. 50-1 at PageID 438.)  Dr. Tucker then referred Plaintiff for a psychiatric evaluation.[1]  (ECF Nos. 48-11 at PageID 363, 374; 54-3 at PageID 733.)  Plaintiff started treatment with a psychiatrist, Dr. Mark Luttrell in September 2018.  (ECF Nos. 48-1 at PageID 187–89; 50-2 at PageID 476; 54-9 at PageID 759.)

### B.     Medical Leave of Absence

After his injury, Plaintiff took a leave of absence from work and filed a workers' compensation claim.  (ECF No. 50-2 at PageID 474–75.)  Defendant processes its employees' workers' compensation claims through a third-party vendor, Sedgwick Claims Management Services ("Sedgwick").  (ECF Nos. 50-3 at PageID 485; 50-4 at PageID 512; 54-2 at PageID 727.)  Sedgwick communicated with FedEx and Plaintiff's physicians through claims adjuster Vincent Alexander.  (ECF Nos. 48-11 at PageID 363–65; 50-3 at PageID 484–86; 50-4 at PageID 512–14.)  Sedgwick received Plaintiff's medical records, notes, and updates from Plaintiff's treating physicians.  (ECF Nos. 50-3 at PageID 484–86; 50-4 at PageID 512–14.)  And

---

[1] Plaintiff acknowledges that Dr. Tucker issued a referral for Plaintiff to see a psychiatrist.  (ECF No. 56 at PageID 766.)  But as addressed below, the parties dispute whether Dr. Tucker conditioned Plaintiff's return to work on this mental evaluation.

Alexander provided FedEx with Plaintiff's work status reports.  (ECF No. 48-11 at PageID 363–65.)  But Sedgwick did not send medical records and treatment notes to FedEx—only work status reports.[2]  (ECF No. 48-11 at PageID 363–65.)

FedEx uses an Optis case management system to store documents and information internally.  (ECF No. 48-1 at PageID 319–20.)  The Optis system allows users to create written entries or upload documents associated with an individual for other users to view.  (*Id.*)  And Defendant used the Optis system to store documents related to Plaintiff's leave of absence.  (ECF Nos. 48-1 at PageID 320; 48-4 at PageID 325–33.)

In May 2018, the month after his injury, Plaintiff received a packet called "Medical Leave of Absence Information and Requirements" and copies of eight People Manual policies.[3]  (ECF No. 48-1 at PageID 180.)  In August 2018, Plaintiff received a letter from FedEx stating that because his leave of absence exceeded ninety days, which exhausted his available FMLA coverage, Defendant had displaced[4] Plaintiff from his employment position.  (*Id.* at PageID 184, 234.)  The letter also stated, "[y]our release to return to work will be handled in accordance with

---

[2] The parties dispute whether and how much Sedgwick made documents received from physicians available to FedEx.  (ECF Nos. 50 at PageID 420; 54-1 at PageID 705–06.)  Defendant relies on Alexander's deposition testimony, in which he states that he could not send referrals or dictated notes to employers.  (ECF No. 54-1 at PageID 705 (citing ECF No. 48-11 at PageID 363–65).)  According to Alexander, FedEx received only work status reports.  (ECF No. 48-11 at PageID 363–65.)  Plaintiff relies on deposition testimony from Shannon Mayhue, a Human Capital Management ("HCMP") advisor at FedEx.  (ECF No. 50 at PageID 420.)  When asked if Sedgwick made medical records available to HCMP specialists at FedEx, Mayhue testified, "[t]o my knowledge, they are available to us."  (ECF No. 50-3 at PageID 486.)

[3] Plaintiff states in response that he "admits, for purposes of summary judgment, to receiving the documents included in Exhibit 17 to his deposition.  Any other statement or allegation is denied and disputed."  (ECF No. 53 at PageID 629.)  But because Plaintiff cites no evidence, the Court treats Defendant's factual assertion as undisputed.  *See* Fed. R. Civ. P. 56(e) and Local Rule 56.1(b).

[4] Being "displaced" meant that Defendant hired someone else to handle Plaintiff's job responsibilities.  But Defendant still considered Plaintiff to be an employee.  (ECF No. 48-1 at PageID 183–84, 234.)

the Medical Leave of Absence Policy." (*Id.* at PageID 234.)  That month, Plaintiff also exchanged several emails with FedEx HR representative Bradley Fowler.  (*Id.* at PageID 235–45.)  Shannon Mayhue, a Human Capital Management ("HCMP") advisor at FedEx, later took over Plaintiff's case file and called Plaintiff three times.  (ECF Nos. 48-2 at PageID 276; 48-4 at PageID 325, 329–30.)

### C.   Medical Treatment

As stated above, Plaintiff underwent a surgical operation on his left foot a few days after his work injury and sought treatment with Dr. Tucker after developing gangrene.  (ECF Nos. 48-1 at PageID 167, 187; 50-1 at PageID 436–38.)  And because of the gangrene, Plaintiff underwent a second surgery to amputate his big toe in June 2018.  (ECF Nos. 50-1 at PageID 438; 54-3 at PageID 733.)

In July 2018, Dr. Tucker referred Plaintiff for a psychiatric evaluation.  (ECF Nos. 48-11 at PageID 363, 374; 54-3 at PageID 733.)  While the parties agree that Dr. Tucker made the referral, they dispute whether Dr. Tucker conditioned Plaintiff's return to work on first receiving a psychiatric evaluation.[5]  In August 2018, after referring Plaintiff for a psychiatric evaluation, Dr. Tucker wrote a work status report restricting Plaintiff to "sedentary duty only."  (ECF No. 53-2 at PageID 652.)  Plaintiff started treatment with a psychiatrist, Dr. Mark Luttrell in September 2018.  (ECF Nos. 48-1 at PageID 187–89; 50-2 at PageID 476; 54-9 at PageID 759.)

And in October 2018, Dr. Luttrell wrote a letter stating, "[a]t this time [Plaintiff] is not able to return back to work until further notice."  (ECF Nos. 48-1 at PageID 248–49; 48-2 at PageID 277; 48-8 at PageID 342.)  In December 2018, Dr. Tucker determined that Plaintiff no

---

[5] Plaintiff acknowledges in his reply that Dr. Tucker issued a referral for Plaintiff to see a psychiatrist.  (ECF No. 56 at PageID 766.)

longer had any work restrictions "from [an] orthopedic standpoint."  (ECF No. 48-1 at PageID 247; *see also* ECF Nos. 48-1 at PageID 187; 48-3 at PageID 314.)  As of July 2019, Dr. Luttrell had not released Plaintiff to return to work.[6]  (ECF No. 48-1 at PageID 192–93.)  Dr. Luttrell passed away in October 2019.  (ECF Nos. 50-1 at PageID 447; 52 at PageID 597 n.11.) Alexander informed Defendant that Dr. Tucker conditioned Plaintiff's return to work on first receiving a psychological evaluation.  (ECF No. 48-11 at PageID 363–65, 367–68, 374–75.)

The Court further addresses this dispute—about when the doctors released Plaintiff to return to work—below.

D.     **Termination and Appeal**

In February 2019, Plaintiff received a letter from Shannon Mayhue stating that Plaintiff had until May 2, 2019, to seek a position at FedEx where he met the minimum qualifications and could perform the essential job functions with or without a reasonable accommodation.[7]  (ECF Nos. 48-1 at PageID 194–95; 48-2 at PageID 279.)  Plaintiff never personally asked anyone at FedEx for an accommodation for him to perform a job at FedEx.[8]  (ECF No. 48-1 at PageID

---

[6] Plaintiff tries to dispute this fact without citing evidence to the contrary.  In essence, Plaintiff argues that Dr. Tucker issued the legally operative work release in August 2018.  (ECF No. 53 at PageID 631–35.)  But evidence about when Dr. Tucker purportedly released Plaintiff to return to work does not refute Defendant's assertion about when Dr. Luttrell released Plaintiff to work. Plaintiff also states that "Dr. Luttrell only recommended [Plaintiff] remain off-work in the knowledge that [Plaintiff] was already being held out from work; his medical opinion may have been completely different if . . . Mr. Williams was back at work[.]"  (ECF No. 53 at PageID 635– 36.)  Because Plaintiff cites no evidence to support this purely speculative contention, the Court will disregard it.

[7] The same correspondence contained FedEx Policy 5-35 on Disabled Individuals, which the Court discusses in more detail below.  (ECF No. 48-1 at PageID 194–95, 255.)

[8] The parties dispute whether Plaintiff requested an accommodation.  (ECF Nos. 47-1 at PageID 131; 53 at PageID 636.)  Citing again to Plaintiff's deposition testimony, Defendant asserts that Plaintiff "never asked anyone at FedEx if FedEx could provide any accommodation for him to perform a job at the FedEx hub."  (ECF No. 47-1 at PageID 131 (citing ECF No. 48-1 at PageID 208–09).)  Plaintiff does not dispute that Plaintiff never personally sought an accommodation from anyone at FedEx.  (ECF No. 53 at PageID 636.)  Plaintiff instead maintains that the August

208–09.)  And Plaintiff did not apply for any open positions at FedEx after receiving Mayhue's

letter, although the parties dispute Plaintiff's reasons for not doing so.  (ECF Nos. 47-1 at

PageID 130; 53 at PageID 633.)

Citing Plaintiff's deposition testimony, Defendant asserts that Plaintiff did not apply for

any open positions "because he had not been released to return to work by Dr. Luttrell."  (ECF

No. 47-1 at PageID 130 (citing ECF No. 48-1 at PageID 196–98).)  Defendant drew its factual

assertion directly from Plaintiff's deposition testimony in which he testified that he never logged

on to the weekly career opportunities website to look for open job positions at FedEx.  (ECF No.

48-1 at PageID 197.)  When asked why, Plaintiff testified that he did not check for any openings

because he "wasn't eligible" since he "wasn't released to return to work" by Dr. Luttrell.  (ECF

No. 48-1 at PageID 196–97.)  Plaintiff counters that the cited testimony and evidence does not

establish Defendant's factual assertion.  (ECF No. 53 at PageID 633.)  But none of the evidence

Plaintiff cites on this issue refutes Defendant's assertion.[9]  And so the Court treats as undisputed

Defendant's assertion that Plaintiff did not apply for any open positions with FedEx because Dr.

Luttrell had not released Plaintiff back to work.  *See* Fed. R. Civ. P. 56(e).

On May 2, 2019, Mayhew informed Plaintiff that Defendant terminated his employment

under its leave of absence policy (FedEx Policy 1-8), because Plaintiff failed to secure a position

at FedEx by the specified date.  (ECF Nos. 48-1 at PageID 199, 262; 51-1 at PageID 587.)

---

2018 work status report from Dr. Tucker amounted to such a request.  (*Id.*)  The Court addresses
this dispute in the legal analysis section below.
[9] Plaintiff cites evidence about when Dr. Tucker purportedly released Plaintiff to return to work.
(ECF No. 53 at PageID 633.)  But this does not refute Defendant's assertion that Plaintiff did not
apply for any open positions because his psychiatrist, Dr. Luttrell, had not released him to return
to work.  Plaintiff also highlights his testimony that he did not apply for any openings because
FedEx policy stated he could not apply until released to return for work.  (ECF No. 53-5 at
PageID 679.)  But this statement from Plaintiff's deposition testimony supports Defendant's
factual assertion.  And so the Court considers Defendant's factual assertion undisputed.

Plaintiff appealed his termination through FedEx's internal appeal process, called the "GFT"

process.  (ECF No. 48-1 at PageID 203–04, 265.)  In his GFT materials submitted to Defendant,

Plaintiff stated, "[t]o date, I still have not received a release from my treating physician to return

to work."  (ECF No. 48-1 at PageID 265.)

In July 2019, FedEx HR advisor Marie Harper sent Plaintiff a letter stating that the FedEx

Appeals Board was preparing Plaintiff's case for review.  (ECF No. 48-1 at PageID 205–06,

267.)  In her letter, Harper also states, "I wanted to discuss the specifics of your case with you

prior to the Appeals Board review; however, my attempts to contact you have been

unsuccessful."  (ECF No. 48-1 at PageID 267.)  Plaintiff decided not to respond to Harper.  (ECF

No. 48-1 at PageID 205–06.)  Plaintiff testified at his deposition that his GFT materials

contained everything he needed to say.  (ECF No. 48-1 at PageID 205.)  FedEx upheld the

decision to terminate Plaintiff's employment throughout the GFT process.  (ECF No. 48-1 at

PageID 206–07, 264, 268.)

### E.     FedEx Policies on Medical Leave

FedEx has policies and procedures in place for employees who need to take a medical

leave of absence.  (ECF No. 48-1 at PageID 164–65, 256; 48-9 at PageID 344, 348; 50-7 at

PageID 573, 577.)  Plaintiff reviewed and familiarized himself with the FedEx Safety Manual

and the People Manual, a collection of FedEx policies and procedures.  (ECF No. 48-1 at PageID

164–65.)  FedEx Policy 5-35 addresses reasonable accommodations.

> Reasonable accommodation is any change in the work environment or in the way
> things are usually done that enables a qualified individual with a covered disability
> to perform the essential functions of the job, or otherwise enjoy the benefits of equal
> employment opportunity.  Examples of accommodation requests may include, but
> are not necessarily limited to, making existing facilities readily accessible for an
> individual with a disability, providing special non-personal equipment or devices,
> modifying non-essential job functions, modify work schedules, excusing some
> absences, extending a leave period and reassignment to a vacant position.

(ECF No. 48-1 at PageID 256.)  If a physician releases an employee to return to work with restrictions and FedEx can accommodate those restrictions, then the employee can return to work at FedEx despite those restrictions.  (ECF Nos. 48-2 at PageID 278; 48-3 at PageID 310–12.) Employees returning from medical leave with medical restrictions may also request an accommodation to return to work.  (ECF Nos. 48-2 at PageID 280; 48-3 at PageID 311.)

FedEx Policy 1-8 relates to "Leave of Absence (Medical) – Operations Hourly and Step Progression" and lists the maximum duration for a full-time employee's Workers' Compensation leave of absence is "365 calendar days unless the employee has an active [short term disability/long term disability] claim."  (ECF Nos. 48-9 at PageID 344, 348; 50-7 at PageID 573, 577.)  This policy also states, "FedEx Express may extend maximum duration depending on the specific facts of the employee's situation.  If an employee requests an extension of maximum duration, please contact your HCMP professional."  (ECF Nos. 48-9 at PageID 348; 50-7 at PageID 577.)  FedEx also has policies prohibiting discrimination, such as FedEx Policy 4-55 on Equal Employment Opportunity and Affirmative Action, and setting internal procedures for handling discrimination complaints, including FedEx Policy 5-6 titled Internal EEO Complaint Process.  (ECF Nos. 48-5 at PageID 335; 48-10 at PageID 353.)

## II.   Disputed Issues

### A.   Available Positions at FedEx

Plaintiff asserts that FedEx had jobs available that he could have performed while on sedentary duty, including flow control agent, global research agent, control room agent, international dock agent, or senior international dock agent.  (ECF No. 50 at PageID 418–19.) According to Plaintiff, he met all other qualifications for these positions.  (*Id.*)  Plaintiff cites his affidavit and to deposition testimony from Terry Brown, a managing director of hub operations

at FedEx.  (ECF Nos. 50-2 at PageID 476; 50-5 at PageID 531.)  Defendant counters first that

Brown's deposition testimony does not support Plaintiff's assertions.  (ECF No. 54-1 at PageID

702–03.)  Indeed, Brown did not testify that Plaintiff qualified for any of those positions or that

those positions required only sedentary work.  (ECF No. 50-5 at PageID 532–34.)  Brown

testified to the number of FedEx employees performing each role during the relevant period.[10]

(*Id.*)  And Brown authenticated job descriptions providing the essential duties and

responsibilities for each position.  (*Id.* at PageID 532–34, 545–54.)  It is unclear from the job

descriptions whether the positions require only sedentary work.  (*Id.* at PageID 545–54.)

 Plaintiff asserts in his affidavit that "based on [his] familiarty with the [FedEx] Hub's

positions and after a review of various job descriptions, [he] possessed the required

qualifications, could fulfil the required job responsibilities, and could perform the [five] positions

from a sedentary position."  (ECF No. 50-2 at PageID 476.)  Defendant objected to this portion

of Plaintiff's affidavit under Federal Rules of Evidence 602, 701, and 901.[11]  (ECF Nos. 54 at

PageID 693; 54-1 at PageID 702–03.)  And Plaintiff's reply does not address these objections.

(ECF No. 56.)  "Just as a party can waive an objection to summary judgment evidence by failing

to raise it in a timely manner, a party can waive its opportunity to meet an objection by failing to

address it."  *Bolden v. Lake Cnty. Bd. of Educ.*, No. 1:19-cv-01262-STA-jay, 2021 WL 4930318,

at *5 (W.D. Tenn. Oct. 21, 2021).  And so the Court could find that Plaintiff waived any

---

[10] For each of these five positions, the number of individuals FedEx employed at each position
increased from 2018 to 2019.  (ECF No. 50-5 at PageID 532–34.)

[11] Rule 602 provides that other than an expert testifying under Rule 703, "[a] witness may testify
to a matter only if evidence is introduced sufficient to support a finding that the witness has
personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the
witness's own testimony."  Fed. R. Evid. 602.  Rule 701 similarly outlines the limits of opinions
offered by witnesses other than experts.  Fed. R. Evid. 701.  Rule 901 governs authenticating and
identifying evidence.  Fed. R. Evid. 901.

response to Defendant's objections.  But Defendant's objections are thin—Defendant merely cites Rules of Federal Evidence without detailing its basis for objecting under those Rules.  (ECF No. 54 at PageID 693.)

Defendant seems to object to these statements because Plaintiff allegedly lacks personal knowledge.  (See  Fed. R. Evid. 601.)  Under Rule 56(c) of the Federal Rules of Civil Procedure, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *See* Fed. R. Civ. P. 56(c)(4).  And Plaintiff states in his affidavit that he "became familiar with many of the positions [at] the [FedEx] Hub" during his employment with FedEx.  (ECF No. 50-2 at PageID 476.)  And Plaintiff bases his statement "on [his] familiarity with the [FedEx] Hub's positions" and "a review of various job descriptions."  (*Id.*)  Defendant has not sufficiently developed an objection that would permit the Court to discount this portion of Plaintiff's affidavit.[12]

### C.    Medical Release to Return to Work

As stated above, the parties dispute when Plaintiff's doctors released him to return to work.  And the parties raise this dispute over and over in response to each other's statement of facts.  For example, Plaintiff asserts that Dr. Tucker released him to return to work when he issued the August 2018 work report restricting Plaintiff to "sedentary duty only."  (ECF No. 53-2 at PageID 652.)  But Defendant maintains that Dr. Tucker conditioned Plaintiff's return to work on first obtaining a psychological evaluation.  (ECF 54-1 at PageID 719.)  And Defendant points

---

[12] Defendant also objects to five other statements in Plaintiff's affidavit.  (ECF Nos. 54 at PageID 693; 54-1 at PageID 709.)  Plaintiff does not respond to these objections.  (ECF No. 56.) As with the objection addressed above, Defendant developed its remaining objections just as thinly.  But the Court need not resolve Defendant's objections because a material factual dispute exists whether or not the Court considers these statements.

out that the psychiatrist, Dr. Luttrell, stated in October 2018 that, "[a]t this time [Plaintiff] is not able to return back to work until further notice." (ECF Nos. 48-1 at PageID 248–49; 48-2 at PageID 277; 48-8 at PageID 342.) And as noted above, Dr. Luttrell did not release Plaintiff to work before July 2019.[13] (ECF No. 48-1 at PageID 192–93.)

Plaintiff acknowledges in his reply that Dr. Tucker referred him to a psychiatrist. (ECF No. 56 at PageID 766.) But Plaintiff denies that Dr. Tucker meant that he could not return to work until after he saw the psychiatrist. (ECF Nos. 53 at PageID 635; 56 at PageID 766.) Plaintiff maintains that the referral was only a recommendation, not a prerequisite for returning to work. (ECF No. 56 at PageID 766.) And so Plaintiff concludes that Dr. Tucker issued the legally operative release for Plaintiff's return to work in August 2018, restricting him to "sedentary duty only." (ECF No. 53 at PageID 635 (citing ECF Nos. 53-1 at PageID 646; 53-2 at PageID 652; 53-4 at PageID 667).)

The parties do not dispute that Alexander informed Defendant that Dr. Tucker conditioned Plaintiff's return to work on first receiving a psychological evaluation. (ECF No. 48-11 at PageID 363–65, 367–68, 374–75.) Plaintiff asserts that "Dr. Tucker never communicated to Defendant that [Plaintiff] should not return to work because he needed to pass a mental health screening; rather, plenty of individuals work while under the care of a mental health expert." (ECF No. 53 at PageID 635 (citing ECF No. 50-4 at PageID 524, 527).) And Plaintiff states that "the cited evidence only supports the allegation that Alexander—a layperson with no medical training whatsoever—communicated to Defendant that [Plaintiff] needed to be

---

[13] As stated above, Plaintiff sought to dispute this fact by citing evidence about when Dr. Tucker purportedly released Plaintiff to return to work. (ECF No. 53 at PageID 631–35.) But rather than refuting Defendant's factual assertion, Plaintiff's evidence speaks to its legal significance.

withheld from work until he passed a mental health screening." (*Id.* (citing ECF Nos. 53-5 at PageID 674; 53-3 at PageID 656).)

Defendant relies on Alexander's deposition testimony. Alexander testified during his deposition that Dr. Tucker communicated to Alexander by dictated note that Plaintiff needed to have a psychological evaluation before returning to work. (ECF No. 48-11 at PageID 367–68.) Alexander also testified that he heard from the nurse case manager, Dawn Robinson, that Plaintiff could not return to work until he received a psychological evaluation. (ECF No. 48-11 at PageID 368.) And Alexander testified that Robinson accompanied Plaintiff to all his medical appointments. (ECF No. 48-11 at PageID 365; 50-6 at PageID 570.)

Plaintiff emphasizes that Alexander also testified that Sedgwick never sent Defendant any medical record, note, or referral reflecting that Plaintiff had to obtain a psychological evaluation before returning to work. (*Id.* at PageID 363–66.) And Alexander testified that nobody at FedEx sought any such documentation. (*Id.* at PageID 364.) That said, Alexander also noted that he could not have provided this documentation—a medical record, note, or referral—even had Defendant asked for it. (*Id.*)

Defendant provided medical records from Dr. Tucker in response to Plaintiff's summary judgment motion. (ECF No. 54-3 & 54-7.) In a July 2018 medical record, Dr. Tucker summarized post-operative care he provided after Plaintiff's second surgery and toe amputation. (ECF No. 54-3 at PageID 733.) Dr. Tucker noted that Plaintiff reported experiencing sleep "disturbed by pain regularly" and "also report[ed] feelings of anxiety and depression." (*Id.*) Dr. Tucker described Plaintiff as "depressed and flat" in mood and affect. (*Id.*) In the record's discussion notes, Dr. Tucker again stated that Plaintiff "voice[d] concerns of anxiety and depression." (*Id.* at PageID 734.) And so Plaintiff "was given a referral for a psychiatric

evaluation." (*Id.*) Dr. Tucker's assessment included postoperative care; gangrene of toe; and foot pain. (*Id.* at PageID 733–34.)

A July 2018 progress report authored by Dawn Robinson, a registered nurse and medical case manager for Genex Services, similarly notes, "[p]sychiatry referral given [to Plaintiff] for depression/anxiety." (ECF No. 54-4 at PageID 736, 740.) The report later states that "Dr. Tucker provided a psych referral," referencing an "[o]rder for psychiatry referral." (*Id.* at PageID 740.)

In an August 2018 medical record, Dr. Tucker stated that Plaintiff reported "persistent insomnia" and was "still depressed about his situation and the partial loss of his great toe." (ECF No. 54-7 at PageID 750.) Dr. Tucker still described Plaintiff as "depressed and flat" in mood and affect. (*Id.*) But Dr. Tucker's assessment in August 2018 included postoperative care; traumatic amputation, greater toe; chronic pain syndrome; insomnia; and depressive disorder. (*Id.*) In the discussion notes, Dr. Tucker "recommend[ed] a psychiatric consult given persistent insomnia and depression related to [Plaintiff's] injury and subsequent foot amputation." (*Id.*) This record also states that Dr. Tucker "[r]eviewed and discussed the above with [Plaintiff's] workers compensation case manager." (*Id.* at PageID 750–51.) Lastly, in December 2018, Dr. Tucker determined that Plaintiff no longer had any work restrictions "from [an] orthopedic standpoint." (ECF No. 48-1 at PageID 247; *see also* ECF Nos. 48-1 at PageID 187; 48-3 at PageID 314.)

Although these medical records do not explicitly condition Plaintiff's return to work on obtaining a psychological evaluation, the Court finds that Alexander's deposition testimony creates a genuine factual dispute over whether Dr. Tucker conditioned Plaintiff's return to work on obtaining a psychological evaluation. Alexander testified that Dr. Tucker's dictated notes and

the nurse case manager informed Alexander that Plaintiff needed to obtain a psychological evaluation before returning to work.  (ECF No. 48-11 at PageID 366–67.)  And Plaintiff does not dispute that "Alexander . . . communicated to Defendant that [Plaintiff] needed to be withheld from work until he passed a mental health screening."  (ECF No. 53 at PageID (citing ECF Nos. 53-5 at PageID 674; 53-3 at PageID 656).)  Nor does Plaintiff provide any evidentiary objections to Defendant's reliance on Alexander's testimony.  What is more, Dr. Luttrell's course of treatment of Plaintiff corroborates Defendant's position to some degree.

Based on the above, the Court finds that the parties have shown a genuine factual dispute over whether Dr. Tucker conditioned Plaintiff's return to work on first obtaining a psychological evaluation.  And the Court therefore finds a genuine factual dispute related to the scope of Dr. Tucker's work status report from August 2018.

## LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party."  *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  And "[t]he moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may satisfy this burden by showing "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–49; *see also* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.  This means that, if "the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. United Auto Workers Loc. 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); *see also Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012).

What is more, "to show that a fact is, or is not, genuinely disputed, both parties are required to either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Bruederle*, 687 F.3d at 776 (internal quotations and citations omitted); *see also Mosholder*, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)).  But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Martinez*, 703 F.3d at 914 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  As a result, "[t]he court need

consider only the cited materials, but it may consider other materials in the record."  Fed. R.

Civ. P. 56(c)(3).

Ultimately, the "question is whether 'the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law.'"  *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015)

(quoting *Liberty Lobby*, 477 U.S. at 251–52).  "[A] mere 'scintilla' of evidence in support of the

non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving

party must present evidence upon which a reasonable jury could find in her favor."  *Tingle v.*

*Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Liberty Lobby*, 477 U.S. at 251).

And statements in affidavits that are "nothing more than rumors, conclusory allegations and

subjective beliefs" are insufficient evidence.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85

(6th Cir. 1992).

The summary judgment standard does not change when both parties file cross-motions

for summary judgment.  *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir.

2016); *Ferro Corp. v. Cookson Group*, 585 F.3d 946, 949 (6th Cir. 2009).  "The fact that both

parties have moved for summary judgment does not mean that the court must grant judgment as

a matter of law for one side or the other; summary judgment in favor of either party is not

proper if disputes remain as to material facts."  *Craig*, 823 F.3d at 387 (quoting *Taft Broad. Co.*

*v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *see also B.F. Goodrich Co. v. U.S. Filter*

*Corp.*, 245 F.3d 587, 593 (6th Cir. 2001).  Indeed, when faced with cross-motions for summary

judgment, "the court must evaluate each party's motion on its own merits, taking care in each

instance to draw all reasonable inferences against the party whose motion is under

consideration." *Craig*, 823 F.3d at 387 (quoting *Taft Broad. Co.*, 929 F.2d at 248); *see also McKim v. Newmarket Techs., Inc.*, 370 F. App'x 600, 603–04 (6th Cir. 2010).

### ANALYSIS OF THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on Plaintiff's claims under the ADA for failure to accommodate, failure to engage in the interactive process, and punitive damages.  (ECF No. 47.)  Defendant asserts that: (1) Plaintiff cannot establish a prima facie case of disability discrimination under the ADA; (2) Plaintiff never requested an accommodation from Defendant; (4) Plaintiff never triggered Defendant's obligations to engage in the interactive process under the ADA; (5) Plaintiff has no evidence that Defendant's legitimate reasons for terminating his employment were a pretext for discrimination; and (6) Defendant did not act maliciously or with reckless indifference to Plaintiff's rights, and Defendant makes good-faith efforts to comply with antidiscrimination laws.  (ECF No. 47 at PageID 124.)

By contrast, Plaintiff moves for summary judgment only on his ADA claim for failure to engage in the interactive process.  (ECF Nos. 49-1 at PageID 381; 56 at PageID 763.)  According to Plaintiff, the ADA required Defendant to engage in the interactive process upon receiving Dr. Tucker's August 2018 work status report.  (ECF No. 49-1 at PageID 387.)  And Plaintiff asserts that Defendant's failure to do so violated the ADA.  (*Id.*)

The Court turns first to Plaintiff's ADA claim for failure to accommodate.

### I.    Failure to Accommodate

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  "Many disabled individuals require accommodations to perform their jobs," and "[t]he ADA addresses this reality by requiring companies . . . to make 'reasonable accommodations to the known . . . limitations of an

otherwise qualified individual with a disability' where such an accommodation does not cause the employer 'undue hardship.'" *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (quoting 42 U.S.C. § 12112(b)(5)); *see also Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 415 (6th Cir. 2020); *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 868 (6th Cir. 2007).  To comply with the ADA, employers must "reasonably accommodate" an individual who is "qualified." *Ford Motor Co.*, 782 F.3d at 761 (quoting 42 U.S.C. § 12112(a), (b)(5)).

Courts analyze discrimination claims "under two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *Fisher*, 951 F.3d at 416 (citing *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016)).  The Sixth Circuit has held that "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Kleiber*, 485 F.3d at 868 (citation omitted); *see also Fisher*, 951 F.3d at 416 (collecting cases).  As a result, rather than employing the *McDonnell Douglas* burden-shifting framework, courts analyze ADA claims for failure to accommodate under the following rubric:

> (1) The plaintiff bears the burden of establishing that he or she is disabled.  (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.  (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Kleiber*, 485 F.3d at 869 (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)).  Put another way, "once an ADA plaintiff establishes that an employer failed to accommodate a known disability, the employer bears the burden 'of proving that . . . a proposed accommodation will impose an undue hardship upon the employer.'" *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (quoting *Kleiber*, 485 F.3d at 869).

19

Defendant does not dispute Plaintiff's disability.  (ECF No. 47-2 at PageID 138–39.)
Defendant asserts only that Plaintiff's claim fails "because he was not a qualified individual at
the time of termination, and he did not request an accommodation."  (*Id.* at PageID 139.)  An
individual is "qualified" under the ADA, if he can "perform the essential functions of [his job]
with or without reasonable accommodation."  *Ford Motor Co.*, 782 F.3d at 761 (quoting 42
U.S.C. § 12111(8)) (internal quotation marks omitted).  And "[a] 'reasonable accommodation'
may include 'job restructuring [and] part-time or modified work schedules.'"  *Id.* (quoting 42
U.S.C. § 12111(9)(B)).  "But it does not include removing an 'essential function[]' from the
position, for that is per se unreasonable."  *Id.* (quoting *Brickers v. Cleveland Bd. of Educ.*, 145
F.3d 846, 850 (6th Cir. 1998)).

Defendant asserts that Plaintiff could not satisfy the essential component of regular
attendance.  (ECF No. 47-2 at PageID 139.)  Plaintiff emphasizes that Dr. Tucker released him to
sedentary work in August 2018.  (ECF No. 52 at PageID 591.)  And so Plaintiff argues that he
could perform the essential functions of his job with a reasonable accommodation, "specifically,
that he be put into a sedentary work position."  (*Id.*)

Defendant is correct that regular attendance is generally an essential function of a job.
*See Gamble v. J.P. Morgan Chase & Co.*, 689 F. App'x 397, 402 (6th Cir. 2017); *see also*
*Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 392–93 (6th Cir. 2017); *E.E.O.C. v. Ford*
*Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc) ("That general rule—that regularly
attending work on-site is essential to most jobs, especially the interactive ones—aligns with the
text of the ADA.").  What is more, "an employee who has not been medically released to return
to work, and therefore cannot perform the essential function of regularly attending his or her job,
is not a qualified individual for purposes of the ADA."  *Gamble*, 689 F. App'x at 402 (citing

*Anderson v. Inland Paperboard & Packaging, Inc.*, 11 F. App'x 432, 438 (6th Cir. 2001); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998)).

As found above, there is a genuine factual dispute about whether Dr. Tucker released Plaintiff to return to work in August 2018 or whether Dr. Tucker conditioned his return to work on first obtaining a psychological evaluation. As a result, it is unclear whether Plaintiff could perform the essential function of regular attendance. And the Court cannot resolve this dispute at the summary judgment stage.

As for the request for accommodation, the undisputed facts show that Plaintiff did not personally request an accommodation. (ECF No. 48-1 at PageID 208–09.) But Plaintiff points to EEOC guidelines stating that a doctor's letter releasing an employee to work with certain restrictions constitutes a request for reasonable accommodation. (ECF No. 52 at PageID 592.) The EEOC guidelines provide the following example of requesting a reasonable accommodation:

> An employee has been out of work for six months with a workers' compensation injury. The employee's doctor sends the employer a letter, stating that the employee is released to return to work, but with certain work restrictions. (Alternatively, the letter may state that the employee is released to return to a light duty position.) The letter constitutes a request for reasonable accommodation.

U.S. Equal Employment Opportunity Commission's Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA. While nonbinding, "the EEOC Enforcement Guidance is 'very persuasive authority' in questions of statutory interpretation of the ADA." *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 816 (6th Cir. 2012) (quoting *Lee v. City of Columbus*, 636 F.3d 245, 256 (6th Cir. 2011)).

The Court is unable to resolve the factual dispute now between the parties about whether Dr. Tucker's August 2018 report released Plaintiff to work (as Plaintiff argues) or did Dr. Tucker require Plaintiff to first see a psychiatrist. If Dr. Tucker did require the psychiatrist first, his

August 2018 report would address only Plaintiff's orthopedic restrictions, much like Dr. Tucker's December 2018 work status report, which determined that Plaintiff no longer had any work restrictions "from [an] orthopedic standpoint."  (ECF No. 48-1 at PageID 247; *see also* ECF Nos. 48-1 at PageID 187; 48-3 at PageID 314.)  Put another way, if Dr. Tucker conditioned Plaintiff's ability to return to work on obtaining a mental evaluation, the August 2018 work status report did not release Plaintiff to work yet.  And in such a scenario, Dr. Tucker's work status report would not equal a request for a reasonable accommodation.

In sum, this factual dispute precludes the Court from granting summary judgment on this claim.  Because a genuine and material factual dispute exists, the Court **DENIES** Defendant's motion for summary judgment on Plaintiff's ADA claim for failure to accommodate.

## III.    Failure to Engage in Interactive Process

Both parties move for summary judgment on Plaintiff's ADA claim for failure to engage in the interactive process.  "Once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Fisher*, 941 F.3d at 421 (quoting *Hostettler v. Coll. Of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018)).  "The duty to engage in the interactive process with a disabled employee is mandatory and 'requires communication and good-faith exploration of possible accommodations.'"  *Keith v. Cnty. of Oakland*, 703 F.3d 918, 929 (6th Cir. 2013) (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007); citing 29 C.F.R. § 1630.2(o)(3)).  "Although mandatory, failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation."  *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014) (citing *Keith*, 703 F.3d at 929; *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005)).

Once an employee triggers this duty by requesting an accommodation, "[e]mployers must engage in a 'good faith' process and an 'individualized inquiry' to determine whether a reasonable accommodation can be made." *Hostettler*, 895 F.3d at 857 (quoting *Rorrer*, 743 F.3d at 1045). And "[o]nce the employee establishes a prima facie showing that he proposed a reasonable accommodation, the employer has the burden of showing how the accommodation would cause an undue hardship." *Fisher*, 941 F.3d at 421 (internal citations and quotation marks omitted); *see also Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202–03 (6th Cir. 2010). "If the interactive process was triggered but not successfully resolved, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Fisher*, 941 F.3d at 421 (quoting *Kleiber*, 485 F.3d at 871).

Defendant argues that Plaintiff never triggered the duty to engage in the interactive process because Plaintiff never requested an accommodation. (ECF No. 47-2 at PageID 140–41.) Defendant also asserts that Dr. Tucker's August 2018 work status report did not trigger its duty to engage in the interactive process. (ECF No. 54 at PageID 684.) Plaintiff counters that Dr. Tucker's August 2018 work status report did trigger Defendant's duty to engage in the interactive process. (ECF No. 49-1 at PageID 387.) Defendant concedes that "it did not engage in the interactive process with Plaintiff based on the August 22, 2018, medical note." (ECF No. 54-1 at PageID 719.)

The Court determined above that there is a genuine dispute of material fact about whether Dr. Tucker conditioned Plaintiff's return to work on obtaining a psychological evaluation. And that factual dispute is also material to whether Dr. Tucker's work status report triggered Defendant's duty to engage in the interactive process. The Court therefore **DENIES** both

parties' motions for summary judgment on Plaintiff's ADA claim for failure to engage in the interactive process.

## IV.   **Punitive Damages**

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for punitive damages.  (ECF No. 47-2 at PageID 142.)  The ADA permits an award of punitive damages in limited circumstances. *Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 583 (6th Cir. 2014) (citing 42 U.S.C. § 1981a(a)(2), (b)(1)); *see also Siewertsen v. Worthington Indus.*, 783 F. App'x 563, 573 (6th Cir. 2019).  "The ADA permits an award of punitive damages 'if the complaining party demonstrates that the [employer] engaged in a discriminatory practice . . . with malice or with reckless indifference to [her] federally protected rights.'"  *Bates*, 767 F.3d at 583 (quoting 42 U.S.C. § 1981a(a)(2) & (b)(1)).  A plaintiff must make this showing by a preponderance of the evidence.  *See Corbin v. Steak 'n Shake, Inc.*, 861 Fed. Appx. 639, 646, 2021 WL 2774264, at *5 (2021) (citing 42 U.S.C. § 1981a(b)(1)).  "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Bates*, 767 F.3d at 583 (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).  "To be liable for punitive damages, 'an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law.'"  *Id.* (quoting *Kolstad*, 527 U.S. at 536).

What is more, a defendant "may avoid punitive-damages liability by showing that it engaged in good-faith efforts to comply with [the antidiscrimination statute].'"  *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 572 (6th Cir. 2019) (quoting *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1072 (6th Cir. 2015)); *see also Denoewer v. Union Cnty. Indus.*, No. 2:17-CV-660, 2020 WL 1244194, at *12 (S.D. Ohio Mar. 16, 2020) ("A defendant can avoid

punitive damages by showing that it engaged in good faith efforts to comply with the law." (citing *Bates*, 767 F.3d at 583)). "Employers who are simply 'unaware of the relevant federal prohibition' or believe that the discrimination is lawful are not subject to punitive damages liability." *Bates*, 767 F.3d at 583 (quoting *Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 799 (6th Cir. 2002); *Kolstad*, 527 U.S. at 536–37).

Defendant asserts that Plaintiff "has no evidence that FedEx acted maliciously or with reckless indifference in terminating his employment after the expiration of his leave of absence." (ECF No. 47-2 at PageID 143.) And Defendant contends that even if Plaintiff can satisfy the "malice" or "reckless indifference" standard, Defendant made good-faith efforts to comply with the ADA. (*Id.* at PageID 143–44.)

Plaintiff asserts in response that "[v]iewing the evidence in the light most favorable to [Plaintiff] reveals a troubling and horrific tale about a long term and dedicated employee who was injured on the job, but then, after a series of unlawful actions, was terminated without FedEx even engaging in the interactive process whatsoever." (ECF No. 52 at PageID 595.) From there, "[t]he narrative begins," as Plaintiff summarizes his version of the facts. (*Id.* at PageID 595–96.) As he retells the facts, Plaintiff asks the Court to accept his speculation about why Dr. Luttrell wrote the October 2018 letter stating that Plaintiff could not return to work. (*Id.* at PageID 596–97.)

And Plaintiff uses forceful language, including that Defendant's conduct "shocks the conscience" and amounts to an "insidious plan to violate [Plaintiff's] ADA rights." (*Id.* at PageID 597.) Plaintiff similarly accuses FedEx of "concoct[ing] a plan to disregard [the ADA's requirements] while giving its actions a lawful veneer." (*Id.* at PageID 598.) And Plaintiff asserts without citing any caselaw that "the facts underlying this litigation certainly provide a

blueprint for when punitive damages are appropriate in an ADA employment discrimination [suit]." (*Id.*)

Plaintiff's arguments lack substance. He does not specifically respond to Defendant's arguments. Nor does he support his arguments with citations to caselaw. (*Id.* at PageID 596–98.) Plaintiff's response makes broad, unsupported claims about plots and schemes he attributes to Defendant without citing any supporting evidence. In essence, Plaintiff summarizes his version of the facts, asserts that Defendant's actions violated the ADA, and concludes that he is therefore entitled to punitive damages. Plaintiff identifies no specific evidence that shows malice or reckless indifference. Even when viewed in the light most favorable to Plaintiff, the evidence is lacking. Plaintiff fails to meet his burden to show malice or reckless indifference. At bottom, no reasonable jury could award Plaintiff punitive damages based on the evidence Plaintiff presents here. Because Plaintiff fails to present enough evidence to maintain a claim for punitive damages, the Court **GRANTS** Defendant's motion for summary judgment as to punitive damages.

<u>**CONCLUSION**</u>

Based on the above, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment. The parties will go to trial on Plaintiff's ADA claim for failure to accommodate and failure to engage in the interactive process.

**SO ORDERED**, this 31st day of March, 2022.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE